IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIELLE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-1016-D |
| | § | |
| EPSILON DATA MANAGEMENT, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Danielle Johnson ("Johnson"), whose employment with defendant Epsilon Data Management, LLC ("Epsilon") was terminated after a brief tenure, sues Epsilon, alleging claims for race, color, and national origin discrimination[1] under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* (West 2023), and retaliation under Title VII and the TCHRA. Epsilon moves for summary judgment as to all of Johnson's claims. For the reasons that follow, the court grants the motion as to Johnson's discrimination claims and denies it as to her retaliation claim.

---

[1] Epsilon maintains that Johnson conceded in her deposition that she is not suing Epsilon for race discrimination. *See* D. Reply Br. (ECF 26) at 4 (asserting that "Plaintiff's claim for discrimination fails as a matter of law, as she has abandoned the claim."). Because the court holds that Johnson's discrimination claims fail on the merits, it will assume *arguendo* that she has not abandoned these claims.

I

Johnson, who is African American, was employed as a Director of Financial Services Strategy and Insight[2] by Epsilon, a marketing company.[3] Johnson was hired on April 19, 2021, after she interviewed with Senior Director of Strategic Services Michael Tambone ("Tambone"), Tambone's supervisor, Shelly Photiades ("Photiades"), and Photiades' supervisor, Rob Cosentino ("Cosentino"), each of whom is Caucasian. Tambone was Johnson's direct supervisor from the outset of her employment.

According to Johnson, from the early days of her employment, Tambone often got angry with her and expressed that he thought she was an angry person. Johnson believed that she was being stereotyped on an ethnic basis and attempted to address this with Tambone. When he was not receptive, she raised her concerns to Photiades. Human resources became involved in June 2021, and Johnson met with Human Resources Manager Alanna Michalisko ("Michalisko") on June 8 to present her history of the allegedly biased interactions with Tambone and Photiades. In a later meeting, Johnson filed a formal complaint with Senior Human Resources Manager Felicia Smith. In early July, Johnson discussed her complaint

---

[2]In the complaint, Johnson alleges that she was employed as a "Director – Financial Services [S]trategy & Insight." Compl. ¶ 3.01. Epsilon alleges that Johnson was employed as a "Director of Strategic Business Consulting." D. Resp. (ECF No. 17) at 4. This distinction is immaterial to the resolution of Epsilon's summary judgment motion.

[3]In deciding Epsilon's summary judgment motion, the court views the evidence in the light most favorable to Johnson as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

with Senior Vice President of Human Resources Beata Weiss ("Weiss"), and Johnson was informed that human resources would investigate the claim. Weiss told Johnson in mid-August that Epsilon could not substantiate discrimination and that Johnson would continue under Tambone's supervision, at which point Johnson threatened to file an Equal Employment Opportunity Commission ("EEOC") complaint. Weiss then told Johnson that she would have to find another position with Epsilon or its parent (Publicis), or she would be terminated. After Johnson was unable to obtain another position, her employment was terminated on September 24, 2021.

Epsilon moves for summary judgment as to all of Johnson's claims. Johnson opposes the motion. The court is deciding the motion on the briefs, without oral argument.

II

Before turning to Epsilon's summary judgment motion, the court will address Johnson's motion for leave to file a surreply and her objections to some of Epsilon's summary judgment evidence. Johnson seeks such leave in order to reply to Epsilon's responses to her evidentiary objections to certain summary judgment evidence. The court concludes in the specific context of this case that Johnson has shown cause for filing the surreply and therefore grants the motion.

Johnson's objections, however, are either misplaced or of no consequence to the court's decision on the merits of Epsilon's summary judgment motion and are therefore moot. Epsilon either is not relying on statements that are conclusory, or, assuming *arguendo* that it is, the court has not considered the statements in question in granting

summary judgment on the discrimination claims and denying summary judgment on the retaliation claim, or the court has ruled in Johnson's favor despite the evidence (e.g., the court held, despite such evidence, that Johnson was qualified for her position). Other statements that Johnson objects to as hearsay are admissible as party admissions under Fed. R. Evid. 801(d)(2)(A) or are not offered for the truth of the matter asserted. And the best evidence objection relates to an email allegedly sent by Johnson to Michalisko, on which the court has not relied in dismissing Johnson's race, color, and national origin claims.

Accordingly, Johnson's evidence objections are overruled on the merits or as moot.

III

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076. Courts must view "all facts and inferences . . . in the light

most favorable to the nonmoving party" and "resolve factual controversies in favor of the nonmoving party . . . when both parties have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

IV

Epsilon moves for summary judgment dismissing Johnson's claims for race, color, and national origin discrimination under Title VII, § 1981, and the TCHRA.

A

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2. The TCHRA provides parallel protections: it is unlawful, *inter alia*, to discharge an individual, or otherwise discriminate against an individual in connection with the terms, conditions, or privileges of employment, because of race, color, or national origin. Tex. Lab. Code Ann. § 21.051 (West 2023). Section 1981 provides: "All persons. . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This includes "the performance . . ., and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

Because Johnson relies on circumstantial evidence to support her discrimination claims, the claims are properly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam). The framework applicable to Johnson's race and color discrimination claims under

§ 1981 and the TCHRA and national origin discrimination claim under the TCHRA is the same as applied to Title VII claims. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) ("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (noting that law governing TCHRA and Title VII is identical); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." (citations omitted)).

Under the *McDonnell Douglas* framework, Johnson must first establish a prima facie case of discrimination, which "creates a presumption that [Epsilon] unlawfully discriminated against" her. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination, Johnson must make a prima facie showing for each claim.

The prima facie showing for a claim of discrimination under Title VII requires that she produce evidence to show that

> (1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam)); *see also AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam) (requiring similar elements under the TCHRA).

Similarly, to make a prima facie showing of race discrimination under § 1981, Johnson must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (citation omitted).

Second, if Johnson establishes a prima facie case, the burden of production shifts to Epsilon to articulate a legitimate, nondiscriminatory reason for the employment actions taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Epsilon's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Epsilon meets its production burden, Johnson may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th

Cir. 2011) (Title VII race discrimination case).[4] Under the pretext alternative, Johnson must "offer sufficient evidence to create a genuine issue of material fact . . . that [Epsilon's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted). Under the mixed-motives alternative, Johnson must offer sufficient evidence to create a genuine factual issue concerning whether Epsilon's "reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Johnson's] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

The parties do not dispute that Johnson is a member of a protected class and that she was subjected to an adverse employment action when she was terminated. Epsilon contends, however, that Johnson cannot establish a prima facie case because she cannot show that she was qualified for her position or that she was treated less favorably than similarly-situated employees outside of her protected class.

---

[4]Johnson acknowledges that "Section 1981 no longer permits a mixed-motive argument." P. Resp. Br. (ECF No. 24) at 2 n.2. Accordingly, the court addresses mixed motives only in the context of Johnson's Title VII and TCHRA claims.

C

The court turns first to Epsilon's contention that Johnson was not qualified for her position. It relies on evidence suggesting that she often failed to meet project deliverables and deadlines, failed to accept constructive feedback, and challenged management about the expectations of her role. Johnson responds that she has introduced evidence of her past experience in similar roles, as well as her completion of several projects, receipt of compliments, and other signs of satisfactory performance from coworkers, supervisors, and others at Epsilon.

Johnson's evidence is sufficient to establish that she was qualified for her position. Moreover, in determining qualification at the prima facie stage, courts need only "focus[] on 'objective job qualifications (e.g. training, experience, and physical capacity).' Subsequent issues with an employee's *performance*—although relevant to the second and third phases of the *McDonnell Douglas* framework—are irrelevant when addressing whether the employee was *qualified* for the position originally." *EEOC v. Ryan's Pointe Hous., L.L.C.*, 2022 WL 4494148, at *5 (5th Cir. Sept. 27, 2022) (quoting *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 n.7 (5th Cir. 1996), and citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988)). The Fifth Circuit has held that an employee need only show that she has not suffered a physical disability, or loss of a necessary professional license, or some other occurrence that renders her unfit for the position for which she was hired. *See Bienkowski*, 851 F.2d at 1506 n.3; *see also Salazar v. Cargill Meat Sols. Corp.*, 628 Fed. Appx. 241, 245 (5th Cir. 2015) (per curiam); *Quick v. Wal-Mart Stores, Inc.*, 728

Fed. Appx. 396, 397 n.2 (5th Cir. 2018) (per curiam). There is no suggestion in the summary judgment record that Johnson was similarly unfit for her position.

Accordingly, Epsilon has not demonstrated that it is entitled to summary judgment on the basis that Johnson was not qualified for her position.

D

Epsilon also contends that Johnson has failed to satisfy the requirement of a prima facie case that she was treated less favorably than similarly situated individuals outside of her protected classes.

"In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018).

Johnson has not produced evidence of specific individuals outside of her protected classes who were treated more favorably in "nearly identical" circumstances. She asserts in her declaration that Tambone berated her for being angry and did not do so for her non-African American peers, and that he canceled several meetings with her, but did not do so for her non-African American peers. She has not, however, produced evidence showing that any non-African American peer to whom she alludes was treated differently in "nearly identical" circumstances. Indeed, she does not identify any individual comparators and

instead alludes to her non-African American peers generally, without establishing that any relevant comparators held her same position, worked under her same supervisors, or were otherwise similarly qualified. She alleges that only four individuals of the twenty in Cosentino's organization were not African American, P. Resp. (ECF No. 24) at 13, but she does not provide evidence that any of these non-African American individuals was similarly situated for purposes of her prima facie case.[5]

Johnson also contends that the "nearly identical" standard for determining similarly situated employees is limited to disparate discipline for misconduct and that a lesser test of similarity should be applied in this case. She cites *Lee*, 574 F.3d 253, for this proposition, but the court disagrees with her reading of *Lee*. Moreover, the Fifth Circuit has applied this standard in non-misconduct cases. *See, e.g.*, *Bellard v. JPS Health Network*, 439 Fed. Appx. 392, 395 (5th Cir. 2011) (per curiam). Regardless, even if this were not the standard,

---

[5]Fed. R. Civ. P. 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *2 n.3 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (quoting *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012). "[T]he court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment." *Id.* (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)). "Rule 56 does not impose upon the district court . . . a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Evanston Ins. Co. v. Consol. Salvage, Inc.*, 2018 WL 5980496, at *2 (N.D. Tex. Nov. 14, 2018) (Fitzwater, J.) (alteration in original) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). "The court is not obligated to consider evidence that the nonmovant fails to cite when opposing the summary judgment motion." *Id.* (citing Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.")).

Johnson still has not provided evidence of any individuals outside her protected groups who were similarly situated with respect to, among other factors, "job responsibility, experience, and qualifications."  *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022).

Citing *Rachid*, 376 F.3d at 309, 312-23, Johnson also maintains that the fourth prong of the prima facie case can be satisfied by any evidence of bias, including statements of bias. *Rachid* does say that, in the *age* discrimination context, other evidence of discrimination based on age may be sufficient.  *Id.* at 309.  And while the Fifth Circuit has largely extended the holding in *Rachid* to Title VII, it has continued to require proof that a similarly situated individual, or "comparator," was treated more favorably in order to make a prima facie showing in the Title VII context.  *See, e.g.*, *Saketkoo*, 31 F.4th at 998; *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021); *Stroy v. Gibson ex rel. Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018); *Vaughn*, 665 F.3d at 636; *Dees v. United Rentals N. Am., Inc.*, 505 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) (distinguishing between the fourth prong in race discrimination and age discrimination claims, noting that race discrimination case requires a showing that the plaintiff "received less favorable treatment due to his members hip in the protected class than did other similarly situated employees[,]" and that, in the age discrimination context, a "[plaintiff] can satisfy the fourth prong by showing that 'he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age[,]" (quoting *Rachid*, 376 F.3d at 309 )); *Vess v. MTD Consumer Grp., Inc.*, 755 Fed. Appx. 404, 407 n.5 (5th Cir. 2019) (per

curiam) (rejecting the argument that the fourth prong of the prima facie case requires only a showing that the plaintiff was "otherwise discharged because of his membership in the protected class" and that the plaintiff did not need to identify a similarly situated comparator). Because the Fifth Circuit continues to require proof of a similarly situated comparator in the Title VII context, this court does the same.

E

Because Johnson has not presented sufficient evidence to satisfy her obligation to establish a prima facie case, the court grants summary judgment dismissing Johnson's race, color, and national origin discrimination claims under Title VII and the TCHRA and her race discrimination claim under § 1981.[6]

V

Epsilon also moves for summary judgment dismissing Johnson's retaliation claim under Title VII and the TCHRA.

A

Title VII and the TCHRA prohibit employers from retaliating against employees who engage in a protected activity. *See* 42 U.S.C. § 2000e-3(a); Tex. Lab. Code Ann. § 21.055 (West 2023). Under both laws, because Johnson relies on circumstantial evidence to support her retaliation claim, she must proceed under the *McDonnell Douglas* burden-shifting

---

[6]Because Johnson has not established a prima facie case of race, color, or national origin discrimination, the court will not address the parties' arguments regarding the same-actor presumption.

framework. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (Title VII); *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 729 (Tex. App. 2014, no pet.) (TCHRA).

Johnson must first demonstrate a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)) (Title VII); *Milteer v. Navarro Cnty.*, 652 F.Supp.3d 754, 765 (N.D. Tex. 2023) (Fitzwater, J.) (citing *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006)) (TCHRA). An employee has engaged in protected activity if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long*, 88 F.3d at 304. The requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but-for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Johnson establishes a prima facie case, the burden of production shifts to Epsilon to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *See Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at * 16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Epsilon meets its production burden, the burden shifts back to Johnson to produce evidence that would enable a reasonable jury to find that retaliation for Johnson's protected conduct, rather than Epsilon's proffered legitimate, nonretaliatory reason, was the "but-for cause" of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g.*, *Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-34)). "In order to avoid summary judgment, [Johnson] must show 'a conflict in substantial evidence' on the question of whether [Epsilon] would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

The parties do not dispute that Johnson was subjected to an adverse employment action when her employment was terminated. Epsilon contends, however, that Johnson did not engage in a protected activity and that, even if she had, there was no causal connection

between her alleged protected activity and her termination.

Johnson has produced evidence that, on multiple occasions, she complained to her supervisors and human resources of "bias-driven interactions" with Tambone. Whether these complaints constitute "protected conduct" turns on whether Johnson had a "reasonable belief" that Tambone's conduct was unlawful. *See Long*, 88 F.3d at 304. Epsilon maintains that Johnson's complaints of "bias-driven interactions" are too vague to constitute protected activity.[7] Johnson has introduced evidence, however, of how Tambone's alleged behavior toward her suggested that he was stereotyping her as an "angry black woman" and that her complaint to HR included this assertion. P. Resp. (ECF No. 24) at 45; D. App. 203. Johnson has also presented evidence that she threatened to file an EEOC charge, which would constitute protected conduct in the form of participating in an investigation or proceeding under Title VII. P. App. (ECF No. 25) at 126. Viewed in the light most favorable to Johnson as the summary judgment nonmovant, she has presented sufficient evidence to create a genuine issue of material fact as to her "reasonable belief" that Tambone's conduct violated Title VII and that she had engaged in protected activity.

C

To satisfy her prima facie case burden, Johnson must also produce evidence of a "causal link" between her complaints and her termination. *See Long,* 88 F.3d at 304. This

---

[7]Epsilon points out that Johnson was adamant in her deposition that she was not making a complaint of "discrimination," but rather of "bias-driven interactions." D. Reply (ECF No. 26) at 8.

causal link may be shown by temporal proximity between the protected action and the adverse employment action. *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019) (Title VII); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) ("The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action."). Adverse action fewer than three months removed from protected activity can constitute sufficient evidence to show a causal connection. *See Garcia*, 938 F.3d at 243. Here, Johnson was informed that she would be terminated if she did not find another position at the end of August 2021, and she was terminated at the end of September 2021. She made several complaints about "bias-driven interactions" to various supervisors and human resources representatives in the preceding three months. This temporal proximity is sufficient evidence of a causal link between her complaints and her termination to satisfy the causation element of her prima facie case.

  Further, with respect to her threat to file an EEOC charge, Johnson has adduced evidence that she was initially going to return to Tambone's supervision, but, after she made the threat, she was told that she would not return to Tambone's supervision and that she would have to find another position with Epsilon or another of Publicis' entities or she would be terminated. This is sufficient to establish the minimal causal connection between the protected conduct (threatening to initiate EEOC proceedings) and the adverse employment action (termination).

D

Because Johnson has satisfied her obligation to establish a prima facie case of unlawful retaliation, the burden of production shifts to Epsilon to produce evidence of a legitimate, nonretaliatory reason for the adverse action taken.

Epsilon has produced evidence of two legitimate, nonretaliatory reasons for Johnson's termination. First, it has produced evidence that she was terminated because of poor work performance and her inability to work with her team. Second, Epsilon has produced evidence that it terminated Johnson because she requested that she no longer report to Tambone and she was unable to obtain another position under a different supervisor within the company. D. App. (ECF No. 19) at 3, 204. These are both legitimate, nonretaliatory reasons, so Epsilon has met its burden of production.

E

Because Epsilon has satisfied its burden of production, the burden has shifted back to Johnson to produce evidence that retaliation was the but-for cause of her termination.

A plaintiff may show that retaliation was the but-for cause of adverse employment action through evidence that the reason given for the adverse employment action was false. *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368-69 (5th Cir. 2013). Johnson has produced evidence that her performance was satisfactory, P. App (ECF No. 25) at 126, and that she did not insist that she was unwilling to work under Tambone, *id.* at 65. This is proof that, if believed by the trier of fact, would enable a reasonable jury to find that Epsilon's purported legitimate, nonretaliatory reasons for her

termination—i.e., that her performance was unsatisfactory and that she insisted she would not work under Tambone—were false, and that retaliation for her protected conduct was the but-for cause for her termination.

Because Johnson has produced sufficient evidence for a reasonable jury to find that retaliation was the but-for cause of her termination, the court holds that Epsilon's motion for summary judgment dismissing Johnson's retaliation claim under Title VII and the TCHRA must be denied.

\* \* \*

For the reasons explained, the court grants summary judgment in favor of Epsilon on Johnson's claims of race, color, and national origin discrimination under Title VII, § 1981, and the TCHRA, and it denies Epsilon's motion for summary judgment on Johnson's retaliation claim under Title VII and the TCHRA.

**SO ORDERED**.

December 27, 2024.

                                                             SIDNEY A. FITZWATER
                                                             SENIOR JUDGE